

ATTORNEYS AT LAW

CityPlace Tower
525 Okeechobee Boulevard | Suite 1200
West Palm Beach, Florida 33401-6350
P.O. Box 150 | West Palm Beach, Florida 33402-0150
561.659.7070 | fax 561.659.7368
www.carltonfields.com

Atlanta
Miami
New York
Orlando
St. Petersburg
Tallahassee
Tampa
**West Palm Beach**

John R. Hart
Attorney at Law
561-650-8024 Direct Dial
jhart@carltonfields.com

April 11, 2013

Nicholas A. Mastroianni, II
112 Santander Drive
Jupiter, FL 33458

**VIA FEDEX OVERNIGHT**

Re:  National City Bank loan to Cocoa Landing, LLLP in the original principal amount of $5,785,000 (the "Loan") secured by a mortgage on approximately 66.79 acres of vacant land located at the southeast corner of Cox Road and State Road 524 in Cocoa, Brevard County, Florida (the "Property") / Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No.: 05-2011-CA-007689 (the "Foreclosure Action")

Dear Mr. Mastroianni:

We represent PNC Bank, National Association, as successor-in-interest to National City Bank, a National Banking Association ("PNC") with respect to the Loan.

Cocoa Landing, LLLP ("Cocoa") defaulted under the loan documents at issue by failing to pay the unpaid principal balance on the maturity date of the Loan, which was September 15, 2008.

As a result of the defaults under the Loan, a Final Judgment of Foreclosure was entered on July 18, 2011 in the Foreclosure Action adjudicating that $8,579,527.94 was due to PNC as of July 18, 2011. The foreclosure sale was held in the Foreclosure Action on August 24, 2011 and PNC's assignee, Capstone ResDev LLC, a Delaware limited liability company, was the successful bidder at the sale. As of the August 24, 2011 foreclosure sale date, the fair market value of the property was no more than $2,250,000, leaving a deficiency balance as of August 24, 2011 of $6,329,527.94, plus interest. Since the August 24, 2011 foreclosure sale, the only payments PNC has received on the Loan total $200,000, which $200,000 does not cover the majority of interest that has accrued on the outstanding deficiency balance of $6,329,527.94.

As you know, on September 15, 2015, you executed a Commercial Guaranty, unconditionally guaranteeing full payment of all amounts due to PNC on the Loan, and on March 12, 2008, you also executed a Reaffirmation of Guaranty, reaffirming all of your obligations under the original Commercial Guaranty. Copies of the Commercial Guaranty and Reaffirmation of Guaranty are enclosed herewith.

This letter is written notification to you that unless a settlement can be reached with respect to your obligations under the Commercial Guaranty within fifteen (15) days of the date of this letter, by no later than April 26, 2013, PNC will initiate legal proceedings against you to

26727844.1

Nicholas A. Mastroianni, II
April 11, 2013
Page 2

collect all outstanding amounts due to PNC on the Loan including, but not limited to, the outstanding principal deficiency balance of $6,329,527.94.

If you desire to resolve this matter, please have your counsel contact me as soon as possible to discuss potential settlement scenarios. If you are unrepresented by counsel, you may contact me directly, but I would advise you to obtain counsel, if possible.

Nothing in this letter should be considered, or construed as, a waiver by PNC of any of its rights under the Loan Documents, or any other available legal and/or equitable remedies, as PNC hereby expressly reserves all of its rights under the Loan Documents and in law and equity.

If you have any questions, please contact me.

                          Sincerely,

                          CARLTON FIELDS, P.A.

                          John R. Hart

JRH/so
Enclosures

cc:    PNC Bank, National Association
        c/o Denise M. Schornack (via e-mail)

*0000000000890263-1022009152005*

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Cocos Landing, LLLP
75 NE 6th Avenue, Suite 103
Delray Beach, FL 33483

**Lender:** Fidelity Federal Bank & Trust
205 Datura Street
West Palm Beach, FL 33401

**Guarantor:** Nicholas A. Mastroianni, II
3300 PGA Blvd., Suite 330
Palm Beach Gardens, FL 33410

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness. This Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time. If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one of these Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion

**COMMERCIAL GUARANTY**
Loan No: 890263-1                                          (Continued)                                                    Page 2

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**GARNISHMENT.** Guarantor consents to the issuance of a continuing writ of garnishment or attachment against Guarantor's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Palm Beach County, State of Florida.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor"

Loan No: 890263-1

**COMMERCIAL GUARANTY**
(Continued)

Page 3

signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

FINANCIAL REPORTING REQUIREMENTS. Guarantor covenants and agrees with Lender that, while this Guaranty is in effect, Guarantor shall furnish Lender at least annually and within one-hundred twenty (120) days of Borrowers fiscal year end, a copy of their tax return and a signed and dated financial statement with supporting bank/brokerage statements.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means Cocoa Landing, LLLP and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Nicholas A. Mastroianni, II, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Fidelity Federal Bank & Trust, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 15, 2005.

GUARANTOR:

X _____
Nicholas A. Mastroianni, II

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Palm Beach Florida_ )
                              ) SS
COUNTY OF _Palm Beach_        )

The foregoing instrument was acknowledged before me this _15th_ day of _September_, 20 _05_ by Nicholas A. Mastroianni, II, who is personally known to me or who has produced _____ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

ROBERT C. STANTON
MY COMMISSION # DD 305795
EXPIRES: June 19, 2009

(Name of Acknowledger Typed, Printed or Stamped)

(Title or Rank)

(Serial Number, if any)

## REAFFIRMATION OF GUARANTY

NICHOLAS A. MASTROIANNI, II ("Guarantor"), having given NATIONAL CITY BANK, successor by merger to Fidelity Federal Bank & Trust ("Bank"), that certain Commercial Guaranty dated September 15, 2005 (the "Guaranty") for payment in full, when due, of any and all indebtedness of COCOA LANDING, LLLP, a Florida limited liability limited partnership (the "Borrower"), to Bank due under that certain that certain Promissory Note dated September 15, 2005 in the original principal amount of Five Million Seven Hundred Eighty-Five Thousand Dollars ($5,785,000.00) (the "Note") and all other documents now or hereafter executed in connection therewith and other accompanying loan documents (sometimes hereafter referred to collectively as "Loan Documents"), does hereby ratify, confirm and restate the Guaranty and all the terms, conditions and obligations set forth therein as if the Guaranty was executed in full as of the date hereof. Guarantor does hereby further ratify and confirm that the Guaranty remains in full force and effect and binding upon the undersigned without any setoffs, defenses or counterclaims of any kind whatsoever.

Guarantor does hereby ratify and confirm the Guaranty as an absolute, irrevocable and unconditional guarantee of any indebtedness due from (and the performance of all obligations of) the Borrower to the Bank with full knowledge that the obligations of the Borrower to the Bank in connection with the Loan Documents have been renewed and modified by that certain Renewal Promissory Note executed by Borrower in favor of Bank of even date herewith in the original principal amount of Five Million Seven Hundred Eighty-Five Thousand Dollars ($5,785,000.00) (the "Renewal Note").

Guarantor further acknowledges and confirms that it is fully familiar with the loan transaction between Borrower and Bank for which its Guaranty was given and all of the terms and conditions of the instruments executed pursuant thereto and all modifications thereof.

GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHT HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSS-CLAIMS AND THIRD-PARTY CLAIMS) ARISING IN CONNECTION WITH THIS REAFFIRMATION OF GUARANTY, THE GUARANTY, ALL LOAN DOCUMENTS EXECUTED OR TO BE EXECUTED IN CONNECTION WITH THE LOAN, THE RENEWAL AND ALL AND ANY COMBINATIONS OF THE FOREGOING. GUARANTOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. GUARANTOR ACKNOWLEDGES THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THE RENEWAL BY THE PROVISIONS OF THIS PARAGRAPH.

IN WITNESS WHEREOF, Guarantor has caused this Reaffirmation of Guaranty to be executed this 14 day of March, 2008.

Signed, sealed and delivered in the presence of:

Print Name: Sandra Albares

Print Name: _____

GUARANTOR:

_____
NICHOLAS A. MASTROIANNI, II

FTL:2543778:1

STATE OF FLORIDA )
) SS:
COUNTY OF Palm Beach )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by NICHOLAS A. MASTROIANNI, II, who is personally known to me or who has produced _____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 14 day of March, 2008.

_____
Notary Public, State of Florida

My Commission Expires:    Typed, printed or stamped name of Notary

SANDRA ALBANESE
MY COMMISSION # DD310280
EXPIRES: August 27, 2008

FTL:2543778:1

2